Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50366 | **DATE** | 8/20/2012 |
| **CASE TITLE** | Rockford Acquisition LLC vs. Harrison Kishwaukee LLC | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, this matter is remanded to the bankruptcy court for a determination of which defects appellee is seeking to enforce existed pre-assumption and to enter an order enforcing the Sale Order by barring appellee from seeking to compel appellant to repair those defects. After the bankruptcy court makes this determination, appellee may proceed with its specific performance action to compel appellant to repair post-assumption defects. Remanded with instructions.

*/s/ Philip G. Reinhard*

■[ For further details see text below.]   Notices mailed by Judicial staff.

# STATEMENT - OPINION

    Appellant, Rockford Acquisitions, LLC n/k/a Rockford Products, LLC appeals from the bankruptcy court's order of October 24, 2011 denying enforcement of a November 15, 2007, order ("Sale Order") entered by the bankruptcy court (Cox, J.), approving an asset purchase agreement ("APA") and authorizing the sale of certain assets ("363 Sale") by a bankruptcy debtor, Rockford Products Corporation ("Debtor"), free and clear of all interests to appellant pursuant to 11 U.S.C. § 363 (b) & (f). The Sale Order also authorized the Debtor to assume (pursuant to 11 U.S.C. § 365), as tenant, an unexpired lease ("Lease") for certain real estate owned by appellee, Harrison Kishwaukee, LLC. (Appellee had purchased this real estate from Debtor and then leased it back to Debtor in December 2006.) After Debtor assumed the Lease pursuant to section 365, the Debtor's interest in the Lease was assigned by Debtor to appellant in conjunction with the 363 Sale of Debtor's assets to appellant pursuant to the APA. Appellant assumed the obligations of the Debtor under the Lease to the extent those obligations arose after the execution of the November 16, 2007, "Assumption and Assignment of Lease" document between Debtor and appellant.

    The Lease contains a provision requiring the tenant to maintain the roof in good repair. On June 10, 2010, roughly two and one-half years after the assumption and assignment of the Lease, appellee made demand on appellant to repair the roof. Appellant refused. On December 3, 2010, appellee brought an action in state court seeking specific performance of appellant's obligation under the Lease to repair or replace the roof. Appellant asserted that the Sale Order barred appellee's action because the need for roof repairs predated the Sale Order and appellant's assumption of the lease and, therefore, the obligation to repair the pre-assumption roof damage was not assumed by appellant. The state court deferred ruling in favor of a decision by the bankruptcy court on the matter.

    On September 6, 2011, appellant filed a motion with the bankruptcy court to enforce the Sale Order. In support of its motion, appellant submitted the affidavit ("Mowris Affidavit") of its president, Richard Mowris. The Mowris Affidavit states Mowris was employed by Debtor at the time it sold and leased back the subject property in December 2006. At that time, the roof leaked at numerous locations throughout the leased premises. No material roof repairs were made between 2006 and the 363 Sale to appellant in November 2007. The roof continued to leak at numerous locations at the time of the 363 Sale. Since late 2007, appellant has incurred over $615,000 in costs for the repair and improvement of the roof.

    Appellee asserts it did not know of any needed roof repairs at the time of the December 2006 sale and lease

back or at the time of the assumption and assignment of the Lease as part of the 363 Sale in November 2007. Appellee says it first learned of roof leaks in 2008.

At an October 24, 2011 hearing, the bankruptcy court (Barbosa, J.) found that appellee's efforts to get appellant to repair the roof did not violate the Sale Order. The bankruptcy court stated the "lease which [appellant] chose to assume has an ongoing obligation to maintain and repair the building and [appellee] has brought an action in State Court for specific performance to enforce that obligation. Had [appellee] been seeking damages for leakage before the assumption or that was caused by the condition of the building at the time of the assumption, that might have been barred by the sale order. However, all [appellee] seems to be doing is asserting a post-assumption breach of contract and seeks to enforce the ongoing obligations that [appellant] chose to assume. There may be a question of contract interpretation as to what the obligation to maintain and repair means and whether the steps [appellant] has already taken to repair the roof satisfy that obligation, but that is an issue for the State Court to decide. You can always argue that the provision only requires it to maintain the building in the state it was in at the time the lease was assumed. However, since [appellee] has made clear that it is only attempting to enforce post-assumption default and post-assumption obligations, it is the State Court and not this Court that has proper jurisdiction to decide that issue. This Court has jurisdiction to enforce the sale order, but from what has been presented here I don't see a violation of that order." Appellant filed timely notice of appeal from the bankruptcy court's order.

In December 2006, Rockford Products Corporation entered a sale and lease back transaction with appellee for certain real estate in Rockford, Illinois. Under the terms of the Lease, Rockford Products Corporation, as tenant, agreed to "be responsible for the repair and replacement of all broken windows, roof and roof drainage systems, and entrance doors." Lease ¶ 11.3. Paragraph 13.1 of the Lease, titled "<u>Tenant Default</u>," provides, for purposes relevant here, that if "Tenant fails to perform any of the other [other than the obligation to pay rent] covenants or conditions of this Lease which Tenant is required to observe and such failure shall continue for thirty (30) calendar days after written notice to Tenant . . . then Landlord may treat the occurrence . . . as a breach of this Lease by Tenant." On July 25, 2007, Rockford Products Corporation, as Debtor, filed for protection under Chapter 11 of the bankruptcy code.

On November 15, 2007, the bankruptcy court entered the Sale Order. The Sale Order authorized the Debtor to assume the Lease under 11 U.S.C. § 365 and assign its interest as tenant under the lease to appellant. The Sale Order provided that, as a non-debtor party to the assumed lease, appellee was barred from asserting any default existing as of the closing date against the Debtor or appellant. It also provided that appellee, by failing to object to the cure amount of $0.00 listed in Schedule 2 to the Sale Order was agreeing that $0.00 was the amount required to cure any defaults under the Lease at the time of assumption by Debtor and its subsequent assignment to appellant.

The APA between the Debtor and appellant, which the Sale Order approved, contained the representation by Debtor, as seller, that "neither Seller nor the lessor under the Lease is in breach or default under the Lease, and no event has occurred or circumstance exists which, with the delivery of notice, passage of time or both, would constitute such a breach or default." APA, ¶ 4.7(a). Appellee, consistent with its non-objection to the $0.00 cure amount, raised no objection to the bankruptcy court's approval of the APA with its representation that there was no breach or default under the Lease at the time the APA was approved by the Sale Order.

Appellant and appellee entered a first amendment to lease ("Amendment") effective with the assignment of the Debtor's interest in the Lease to appellant effective November 16, 2007. The Amendment provided that the "Lease, as herein amended, is hereby ratified and confirmed and shall remain in full force and effect." The Amendment did not make any changes to the roof repair obligations under the Lease.

As an initial matter, appellee contends the bankruptcy court lacked subject matter jurisdiction to hear the motion to enforce the Sale Order. Appellee argues the bankruptcy court lacked jurisdiction because the dispute between it and appellant does not involve property of the bankruptcy estate, or the amount of property available for distribution to creditors and, therefore, does not fall within the "related to" jurisdiction conferred by 28 U.S.C. § 1334 (b). However, a bankruptcy court always has jurisdiction to interpret and enforce its own prior orders. <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 129 S.Ct. 2195, 2205 (2009). Appellee was admittedly a party to the proceeding in which the Sale Order was entered and, therefore, is subject to that order. <u>Id.</u> The bankruptcy court has jurisdiction to enforce the Sale Order.

Disappointed expectations bring both parties to court. Appellee expected appellant to repair the roof because the Lease says it is appellant's responsibility. Appellant expected to operate its business in the leased premises without being burdened by the prior defaults of the Debtor because that is the deal it negotiated in the APA and that is

what the bankruptcy court ordered in the Sale Order.  Neither party claims it was specifically thinking about the roof in the melee leading to the sale of Debtor's assets to appellant and the assumption and assignment of the Lease pursuant to that sale.  Appellant has been repairing the roof.  It has spent over $615,000 on roof repairs since taking over as tenant.  The problem does not appear to be appellant's unwillingness to repair the roof but its unwillingness to do so on the timetable demanded by appellee.  Did appellee give up its right to demand repair of defects that existed pre-assumption or is appellee correct that the Sale Order had no effect on the Lease requirement that the tenant repair the roof?

The Sale Order, for purposes relevant to this appeal, has two aspects: 1) authorizing the assumption by the Debtor, Rockford Products Corporation, of its unexpired lease with appellee as allowed by 11 U.S.C. § 365 and 2) approving the sale of the assets of the Debtor (including its leasehold interest under that assumed unexpired lease ) to appellant "free and clear of any interest in such property of an entity other than the [Debtor's] estate" as allowed by 11 U.S.C. § 363 (f).

In order for a chapter 11 debtor to assume an unexpired lease under section 365, the debtor, among other things, must cure or provide adequate assurance it will promptly cure, any default that has occurred under the lease. 11 U.S.C. § 365 (b) (1).  Schedule 2, attached to the Sale Order, set the cure amount due under the Lease at the time of its assumption at $0.00.  Appellee did not object to this cure amount and the Sale Order deemed such non-objection to constitute an agreement to that amount. Sale Order ¶ 22.  Therefore, per the Sale Order, there was no default in need of curing at the time the Lease was assumed by Debtor and the bankruptcy court approved Debtor's assumption of the Lease on that ground.

The Sale Order also approved the sale by the Debtor of its assets to appellant free and clear of the interests of any other entity in those assets pursuant to the authority to do so found in 11 U.S.C. § 363 (f).  This sale was pursuant to the terms of the APA.  In the APA, Debtor, as seller, represented to appellant as buyer, that there were no defaults under the Lease it was assigning to appellant as a part of the 363 Sale.  The Sale Order also prohibits appellee from asserting any default existing as of the closing date against Debtor or appellant. Sale Order ¶ 22.   Appellant argues that the Sale Order absolved it from any obligation under the Lease to repair any roof defects that existed at the time the lease was assigned to it.  Appellant maintains, supported by the Mowris Affidavit, that the roof defects appellee is seeking to compel it to repair existed at the time of the assumption and assignment and asked the bankruptcy court to bar appellee's attempt to compel appellant to repair the roof as a violation of the Sale Order.  Appellee does not claim the roof did not need repair at the time of the Sale Order (though it says it was unaware of any leaks) but rather that the obligation to repair the roof is a continuing obligation under the lease, so that it does not matter when the defects requiring repair occurred.  According to appellee, the duty to repair is unaffected by the Sale Order and appellant is required to repair the roof regardless of when the repairs became necessary.

 Section 365 of the Bankruptcy Code provides that a chapter 11 debtor "may not assume" an unexpired lease if there has been a default unless there is a cure, or provision for a cure, of that default at the time of the assumption. 11 U.S.C. § 365 (b) (1).  Paragraph 21 of the Sale Order finds that all "requirements and conditions under Section 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of [the Lease] have been satisfied."  Paragraph 22 of the Sale Order says that "[u]pon assumption of [the Lease] in accordance with this Sale Order, [appellee] hereby is forever barred . . . from asserting against the Debtors or the Buyer [appellant]  . . . any default existing as of the Closing Date."  The next sentence of paragraph 22 confirms, the amount needed to cure any default was the Cure Amount listed in Schedule 2 to the Sale Order– $0.00.  The Sale Order relies on the absence of a default to sustain its approval of the assumption of the Lease.  If there had been an uncured default, the bankruptcy court could not have approved the lease assumption.

Section 365 gives a lessee-debtor the right, with bankruptcy court approval, to hold a non-debtor lessor to an unexpired lease despite the lessee's bankruptcy.  To provide some balance to this right, section 365 requires the debtor to cure any default existing at the time the debtor elects to assume the lease.  A determination of what is required for a cure must occur at the time the bankruptcy court approves the assumption in order for the bankruptcy court to determine if the assumption, when seen in light of all of the other obligations of the debtor, is in the best interest of the bankruptcy estate.  If the required cure is too expensive, it would adversely affect other creditors by allowing the debtor to transfer a disproportionate value to its lessor, leaving less for other creditors.  The amount needed to cure, and provision for its payment, must be established before the assumption can be approved.  Once the amount is agreed upon and approved by the bankruptcy court, the lessor cannot claim post-assumption that more was required to cure

the pre-assumption default.

Appellee argues the obligation to repair the roof is continuing and, therefore, it does not matter when the need for repair arose. Under Illinois law, if a tenant is responsible for repairs, the expense of repairing subsequently discovered deficiencies falls on the tenant. Rexam Beverage Can Co. v. Bolger, 620 F.3d 718, 726 (7th Cir. 2010). Under this view, appellant would be on the hook for the defects whenever they arose because appellant had the duty to repair at the time they were discovered. By this reasoning, appellee could have demanded the Debtor repair the roof immediately after the bankruptcy court approved the assumption. This would defeat the purpose of requiring the cure for default to be approved as part of the bankruptcy court's approval of the lease assumption. By agreeing to a cure amount of $0.00, appellee was effectively agreeing to give up any pre-assumption default claims concerning roof repair. If appellee failed to investigate and pursue cure for all pre-assumption defaults at the time of the assumption, it must live with the consequences of that decision.

In NCL Corp. v. Lone Star Building Centers (Eastern) Inc., 144 B.R. 170, 178-79 (S.D. Fla. 1992), the court found res judicata barred a landowner's claim against a subsequent lessee where a predecessor lessee had assumed a lease in a bankruptcy proceeding and the owner had not raised pre-assumption defaults concerning lease provisions requiring compliance with legal and regulatory requirements (environmental contamination was the issue) at the time the bankruptcy court approved the lease assumption. The subsequent lessee remained liable for any post-assumption violations. Id.

In In re Sportsman's Warehouse, Inc., 457 B.R. 372, 398-99 (Bankr. D. Del. 2011), the court found the plaintiff-debtor had stated a claim that an assumption order barred a landlord's claim that the debtor breached a purchase obligation under a lease where plaintiff alleged the purchase obligation arose prior to the lease assumption and the landlord accepted a $0 cure amount at the time of assumption even though the debtor had already defaulted on its purchase obligation. If these facts were proven, the landlord's claim for the breach of this lease provision would be unenforceable because the landlord agreed at the time of the assumption that no cure of any default was required. Id.

Accepting a zero cure amount when a lease is assumed means giving up the right to pursue defaults that existed at the time of the assumption.

The bankruptcy court found appellee's bringing the state court action did not violate the Sale Order because it was "only attempting to enforce post-assumption default and post-assumption obligations." Implicit in this finding is that an attempt to enforce a pre-assumption obligation would violate the Sale Order. The only evidence concerning the time the leaks originated is the Mowris Affidavit which establishes the roof leaked in numerous places at the time of the assumption and assignment. The Mowris Affidavit also states the "roof still periodically leaks" and opines it does so "as a result of conditions that existed before the Sale." From the evidence, this looks like an attempt to enforce a pre-assumption obligation.

Because appellee agreed to a cure amount of zero at the time of the assumption, it is precluded from seeking to enforce defaults that existed prior to the assumption. These defaults include any roof defects that were in need of repair at that time. Appellant remains liable to repair the roof including post-assumption defects. A factual determination must be made as to which roof defects that appellee is demanding be repaired existed pre-assumption. Appellant, because it has the current duty to repair the roof under the Lease, bears the burden of establishing which defects appellee is demanding be repaired existed at the time of the assumption. Appellee will be barred from demanding these defects be repaired. Enforcement as to all other defects may proceed.

For the foregoing reasons, this matter is remanded to the bankruptcy court for a determination of which defects appellee is seeking to enforce existed pre-assumption and to enter an order enforcing the Sale Order by barring appellee from seeking to compel appellant to repair those defects. After the bankruptcy court makes this determination, appellee may proceed with its specific performance action to compel appellant to repair post-assumption defects.

Remanded with instructions.